IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

HILDA L. SOLIS,
Secretary of Labor
United States Department of Labor,

                  Plaintiff,

vs.                                                 Case No. 08-4083-SAC

WARREN B. MERRILL and
JEFFREY MERRILL,

                  Defendants.

MEMORANDUM AND ORDER

This ERISA case comes before the court on plaintiff's unopposed motion for summary judgment. After the plaintiff moved for summary judgment and neither defendant filed a response, the court issued a show cause order, Dk. 32, to which defendant Warren Merrill, acting pro se, failed to respond. Counsel for defendant Jeffrey Merrill responded to the show cause order, stating that his client had failed and refused to communicate with counsel or participate in his own defense since very early in this litigation, thus he was not able to file a response. Dk. 34. In accordance with Local Rule 7.4, the plaintiff's summary judgment motion shall be considered and decided as an uncontested motion, and granted. The court additionally considers the motion on its merits.

**Facts**

The following facts are stipulated to in the Pretrial Order, and are independently established in the plaintiff's unopposed motion.

B&W Electrical Contractors, Inc. ("B&W") is a Kansas S corporation that, at all times relevant hereto, had its principal place of business in Salina, Kansas. Defendant Warren Merrill bought B&W in July 2002 and is the President and owner of B&W. Defendant Jeffrey Merrill is the Vice President of B&W.

**The 401(k) Plan**

B&W was the Plan Sponsor of the B&W Electrical Contractors 401(k) Plan (the "401(k) Plan"). The 401(k) Plan is an ERISA-covered Plan which is a defined contribution, deferred compensation plan administered in Kansas. Both defendants were named as Trustees of the 401(k) Plan in the Adoption Agreement of the 401(k) Plan. That Agreement was executed on December 3, 2004 by Warren Merrill as President of B&W and as Trustee of the 401(k) Plan, and by Jeffrey Merrill as Trustee of the 401(k) Plan. It states that each trustee "accepts the position and agrees to all of the obligations, responsibilities and duties imposed upon the Trustee under the prototype Plan and Trust." The 401(k) Plan Summary Plan Description identifies the Plan Administrator and Plan Sponsor as B&W, and identifies Warren Merrill and Jeffrey Merrill as Trustees.

Both defendants signed the Special Power of Attorney authorizing the appointment of CPI Qualified Plan Consultants to act in the interest of the 401(k) Plan for distributions, investments, and loans. Defendant Jeffrey Merrill is named as Plan Trustee in the Custodial Account Adoption Agreement with Matrix Capital Bank. Defendant Warren Merrill is named as Plan Trustee in that Agreement on behalf of the Plan Sponsor, B&W, and on behalf of the 401(k) Plan. Both defendants signed that Agreement on August 19, 2004.

The standard practice at B & W was to run weekly payrolls, deduct participant contributions, deposit the contributions in the general account, then forward the contribution amounts to the service provider. For pay periods in May through August 2005, $22,670.22 in elective salary deferral contributions were withheld from B&W employees' pay for contribution to the 401(k) Plan, but were never forwarded to the 401(k) Plan. Both defendants knew that these contributions had not been forwarded. B&W paid other bills during the period from May through August 2005, apparently from the general account.

Warren Merrill made the payment decisions at B & W. Before B & W closed,[1] he decided which bills to pay by determining which were the most pressing. Warren Merrill stipulates that he and Jeffrey Merrill discussed the 401(k) Plan, that both decided to keep it going as an employee benefit, and that both made the decision whether to forward employee deferral contributions to the 401(k) Plan. The record does not reflect, however, when or under what circumstances this discussion or these discussions occurred, or whether they are relevant to the issues before this court.

**The Health Plan**

B&W Electrical Contractors, Inc. Group Health Plan (the "Health Plan") is a fully insured contract for health care coverage with Coventry Healthcare of Kansas ("Coventry") for the benefit of B&W employees. The Health Plan is an ERISA-covered plan. B&W is the only named fiduciary and Plan Administrator of the Health Plan. Jeffrey Merrill executed the Group Master Contract for the Health Plan on February 8,

---

[1] The date of B & W's closure is not included in the record but it appears to be in August or September of 2005.

2005. Less than three months thereafter, B & W apparently became delinquent in its payment of premiums for the Health Plan. Jeffrey Merrill received a letter from Coventry dated April 28, 2005, discussing the arrangement of a payment plan by B&W for delinquent premiums due on the Health Plan. Jeffrey Merrill responded to Coventry by a letter dated July 1, 2005, and enclosed a check in the amount of $29,672.33 for Health Plan premiums, but asked Coventry not to cash the check for a few days, explaining that B&W was in the process of borrowing money to cover it.

For pay periods in May through August 2005, $7,584.82 in health insurance premiums were withheld from B&W employee pay for contribution to the Health Plan, but, along with the employer portion of the premiums, were not forwarded to the Health Plan, causing retroactive cancellation of coverage. Both defendants knew that these health insurance premiums had not been timely forwarded.

**Defendants' contentions**

The court notes defendants' contentions included in the pretrial order, but gives them no weight since they are unsupported by affidavits, stipulations, or other proof. Dk. 29, p. 13-14. Defendant Warren Merrill contends that the funds at issue in this case were collected, but Sunflower Bank froze the accounts and would not allow the money to be sent. Defendant Jeffrey Merrill contends that he was not an owner of B & W at any time, that he had no actual authority to act or cause any payment to be made except when expressly directed to do so, that he had no discretionary authority over the assets of the Health Plan, that he had no discretion or authority within the corporate setup of B & W to segregate and forward amounts deferred by employees to either the Health Plan or the 401(k) Plan, and that his fault, if any, should be compared with the fault of

4

defendant Warren Merrill.

**Analysis**

        **Were unforwarded employee contributions plan assets?**

ERISA itself does not define what constitutes an "asset" of an ERISA fund. The Department of Labor has instructed that "the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law. In general, the assets of a welfare plan would include any property, tangible or intangible, in which the plan has a beneficial ownership interest." Department of Labor Advisory Opinion No. 93-14A (May 5, 1993), 1993 WL 188473, at *4. A Department of Labor regulation clarifies that "plan assets" for purposes of Title I of ERISA include employee contributions to benefit plans which are withheld from employees' paychecks by employers even if the amounts withheld are not yet delivered to the benefit plan. It defines "plan assets" to include "amounts that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102.[2]  "In no event shall the date ... occur later than... the 15th business day of the month following the month in which such amounts would otherwise have been payable to the participant in cash (in the case of amounts withheld by an employer from

---

[2]The Tenth Circuit, in *In re Luna*, 406 F.3d 1192 (10th Cir. 2005), held that the contractual right to the unpaid employer contributions is an "asset" under ERISA, although the unpaid employer contributions themselves may not be. 406 F.3d at 1201. The Court took pains to distinguish unpaid employee contributions to an ERISA plan.

a participant's wages)." Other courts have similarly defined the term to "include employee contributions to benefit plans which are withheld from employees' paychecks and for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan." *Bannistor v. Ullman,* 287 F.3d 394, 402 (5th Cir. 2002), quoting *United States v. Grizzle*, 933 F.2d 943, 946 (11th Cir.), *cert. denied*, 502 U.S. 897 (1991). In accordance with this law, the court finds that the elective salary deferral contributions which were withheld from B&W employees' pay for contribution to the 401(k) Plan, and the health insurance premiums which were withheld from B&W employees' pay for contribution to the Health Plan, are assets of those respective ERISA funds.

**Were defendants fiduciaries?**

Because ERISA's duties are imposed on fiduciaries, this court's next task is to determine whether defendants were fiduciaries of B & W's 401(k) or Health Plans.

> In every case charging breach of ERISA fiduciary duty, ... the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.

*Pegram v. Herdrich*, 530 U.S. 211, 226,120 S.Ct. 2143 (2000). Under ERISA, an individual "may acquire fiduciary status" either by (a) being expressly appointed by the plan as a fiduciary, or (b) by "exercis[ing] the fiduciary functions set forth in ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A)." *In re Luna*, 406 F.3d at 1201. The term "fiduciary" is broadly construed. *In re Luna*, 406 F.3d at 1208.

The uncontested facts establish that both defendants signed the 401(k) Plan as trustees. "ERISA conclusively establishe[s] that "an employee benefit fund trustee is a

6

fiduciary ..." *Connolly v. Pension Ben. Guar. Corp.*, 475 U.S. 211, 234, 106 S.Ct. 1018, 1031 (1986), quoting *NLRB v. Amax Coal Co.*, 453 U.S. 322, 334, 101 S.Ct. 2789, 2796, 69 L.Ed.2d 672 (1981). *See Holdeman v. Devine*, 572 F.3d 1190, 1193 (10th Cir. 2009).

> [A] trustee of a plan must, by the very nature of his position, have "discretionary authority or discretionary responsibility in the administration" of the plan within the meaning of section 3(21)(A)(iii) of the Act. Persons who hold such positions will therefore be fiduciaries.

29 C.F.R. § 2509.75-8, D-3A. Accordingly, the court finds that Warren Merrill and Jeffrey Merrill are both fiduciaries of B & W's 401(k) Plan.

Whether both defendants are fiduciaries of the Health Plan is a closer question. The only named fiduciary of the Health Plan is B & W. ERISA provides that a person is a fiduciary with respect to a plan to the extent that "(i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets..." 29 U.S.C.A. § 1002(21)(A).

To support its allegations that defendants were functional fiduciaries of the Health Plan, plaintiff points to Warren and Jeffrey Merrill's respective positions as President and Vice-President of B & W. But a person's status as a corporate officer does not by itself make him a fiduciary of an ERISA plan. *See Holdeman v. Devine*, 474 F.3d 770, 779-80 (10th Cir. 2007); *In re Luna*, 406 F.3d at 1205-08; 29 C.F.R. § 2509.75-8 at D-5.

Plaintiff additionally contends that Warren Merrill is a fiduciary by virtue of his control over Health Plan assets. Plaintiff points to the facts that Warren Merrill had

check writing authority at B & W in 2005, that he made the payment decisions at B & W, and that he chose to pay other bills rather than to forward to the Health Plan the health insurance premiums which had been withheld from B&W employees' paychecks. The court agrees that these actions show that Warren Merrill exercised some authority or control respecting management or disposition of Health Plan assets, rendering him a fiduciary with respect to the Health Plan.

Plaintiff contends that Jeffrey Merrill's control over the Health Plan or its assets is shown through two events. First, he signed a contract to initiate the Health Plan on February 8, 2005. The court finds this to be insufficient, as Jeffrey Merrill signed in his capacity as Vice-President of B & W, not as a trustee of the Health Plan. A corporate officer's signing of a contract to obtain health insurance for the benefit of the corporation's employees is insufficient to show any discretionary authority or discretionary control over the management of the plan itself, and fails to show any control whatsoever over the management or disposition of plan assets. *See In re Luna*, 406 F.3d at 1204 (defining "management").

Secondly, plaintiff points to Jeffrey Merrill's letter to Coventry about B & W's outstanding premiums for the Health Plan, which enclosed a check for $29,672.33, and asked Coventry not to cash it for a few days until B & W could borrow the money to cover it. The plaintiff does not allege that Jeffrey Merrill either signed that check or had any signature authority, and the sole person disclosed by the record to have had check signing authority is Warren Merrill.[3] The record fails to reveal whether anyone directed

---

[3]Even being a signatory as to plan assets is likely insufficient to render one an ERISA fiduciary. *See Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1133 (10th

8

Jeffrey Merrill to send the letter or whether he did so on his own initiative or in the exercise of his own discretion. The letter itself evidences that Jeffrey Merrill was trying to comply with the Health Plan documents, not trying to dissipate Health Plan assets, by sending payment of the required premiums. This letter fails to show that this defendant exercised discretionary authority or discretionary control over the management of the Health Plan, or exercised any control whatsoever over the management or disposition of plan assets. Further, the record as a whole fails to establish that Jeffrey Merrill had any responsibility for determining which of the company's creditors would be paid or in what order, or that he was a signatory on the Health Plan account or general account, or that he actually exercised any control over the Health Plan assets themselves. Accordingly, the court finds that the record does not show as a matter of law that Jeffrey Merrill performed any of the functions enumerated in § 1002(21)(A) so as to render him personally liable for breach of fiduciary duty under ERISA relative to the Health Plan.

**Did defendant breach their fiduciary duties?**

**404(a) claims**

Plaintiff first contends that defendants, as fiduciaries, breached ERISA duties of loyalty and prudence as to the 401(k) Plan and the Health Plan.

> As a general matter, a relationship of trust is established when one acquires possession of another's property with the understanding that it is to be used for the owner's benefit, and in these circumstances an obligation arises on the part of the one in possession to act in the owner's bests interests rather than his own.

Estate of Simper, 407 F.3d at 1134. Under ERISA, trustees have a fiduciary duty to "act

---

Cir. 2005).

to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries." *Central States, Se. & Sw. Areas Pension Fund v. Central Transp., Inc.*, 472 U.S. 559, 571 (1985); *see also Holdeman*, 572 F.3d at 1193. The plaintiff has the burden of establishing a prima facie case of breach of fiduciary duty under section 404(a). *Martin v. Feilen*, 965 F.2d 660, 671 (8th Cir.1992), *cert. denied*, 506 U.S. 1054 (1993).

A fiduciary breaches his duty of loyalty whenever he acts to benefit his own personal interest or the interest of a third party. *See* 29 U.S.C. § 1104(a)(1)(A); *Bevel v. Higginbottom*, 2001 WL 1352896 (E.D. Okla. 2001). ERISA also imposes upon fiduciaries a separate but closely related duty of prudence which, among other matters, requires fiduciaries to "act in accordance with the documents and instruments governing the plan." *Morgan v. Independent Drivers Ass'n Pension Plan*, 975 F.2d 1467, 1469 (10th Cir.1992) (noting that the prudent person standard applies to all subsections, including 1104(a)(1)(D)).

*In re Luna* holds that where the employer's own funds are involved, the employer's decision to use those funds to pay other business or personal expenses rather than to make contractually-owed contributions to an ERISA trust fund may be "a business decision, not a breach of fiduciary duty." 406 F.3d at 1207. *See Holdeman*, 474 F.3d at 780 (finding CEO's alleged failure to allocate adequate funding to the Plan, including his decision to distribute substantial amounts to the principals of State Line, was in his capacity as CEO of State Line, and not in his capacity as a plan fiduciary). But *Luna* distinguishes between funds withheld or deducted from employees' paychecks and other funds that an employer is contractually obligated to pay to an ERISA plan,

treating contributions to the ERISA plans out of an employee's taxable income as being owned by the employee and held in trust by the employer. *See Id.* at 1199 n. 3, Id. at 1206 n. 11, Id. n. 13.

The record shows that from May through August of 2005, salary deferral contributions for the 401(k) Plan, and health insurance premiums were withheld from employees' pay, were deposited in the company's general account, but were not forwarded to either Plan. Instead, defendant Warren Merrill commingled plan assets with B & W's general assets, and chose to use plan assets to pay B & W's creditors, rather than forwarding the assets to the 401(k) Plan or to the Health Plan.

The court finds that Warren Merrill's acts constitute a breach of the fiduciary duties of loyalty and prudence. The court understands the difficulties inherent in the dual capacities of employer and fiduciary held by Warren Merrill. "ERISA does require, however, that the fiduciary with two hats wear only one at a time, and wear the fiduciary hat when making fiduciary decisions." *Holdeman*, 572 F.3d at 1193, quoting *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). Jeffrey Merrill, as a co-fiduciary for the 401(k) Plan, knew that these employee withholdings had not been forwarded to the 401(l) Plan and thus knew of the breach, rendering him jointly and severally liable under 29 U.S.C. § 1105(a)(3), as to the loss to the 401(k) Plan. See ERISA § 405(a), 29 U.S.C. § 1105(a); *Lowen v. Tower Asset Management,* Inc., 829 F.2d 1209, 1221 (2d Cir.1987) (Co-fiduciaries who have knowledge of, knowingly participate in, or enable the commitment of a breach of duty by another fiduciary are jointly and severally liable with the breaching fiduciary). In light of the findings above, the court finds it unnecessary to address the plaintiff's claims that the defendants, as fiduciaries, additionally violated §

11

406(a) and (b).

**Relief**

This Court has broad and flexible equitable remedies for redressing violations of ERISA's fiduciary duties. *Eaves v. Penn*, 587 F.2d 453 (10th Cir.1978). *See* ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5). "Generally, in the absence of an election of a particular remedy by all beneficiaries, the court has a duty to enforce the remedy which is most advantageous to the participants and most conducive to effectuating the purposes of the trust." *Eaves v. Penn*, 587 F.2d 453, 462 -463 (10th Cir. 1978).

Based upon the undisputed facts, the court orders defendants Warren Merrill and Jeffrey Merrill to restore $22,670.22 in employee withholdings to the 401(k) Plan, and orders defendant Warren Merrill to restore $7,584.82 in health insurance payroll withholdings directly to the Health Plan participants, since the Health Plan was canceled and is no longer in effect.

Plaintiff additionally seeks pre-judgment interest, a matter that lies within the discretion of the district court. *See Kellogg v. Metropolitan Life Ins. Co.,* 549 F.3d 818, 833 (10th Cir. 2008). "Prejudgment interest is appropriate when its award serves to compensate the injured party and its award is otherwise equitable. *Overbrook Farmers Union v. Mo. Pac. RR.*, 21 F.3d 360, 366 (10th Cir.1994)." *Allison v. Bank One-Denver,* 289 F.3d 1223, 1243 (10th Cir. 2002). It is "generally available to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment." *Caldwell v. Life Ins. Co. of North America*, 287 F.3d 1276, 1286 (10th Cir. 2002) (internal quotation marks and citations omitted). Given the length of time that has passed, the court finds an award of prejudgment interest is

appropriate.

The court must then determine which interest rate to use. The plaintiff invites the court to use the interest rate specified in 26 U.S.C. § 6621(a)(2).

> Calculation of the rate for prejudgment interest also "rests firmly within the sound discretion of the trial court." *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1287 (10th Cir. 2002); *id.* at 1287-88 (rejecting argument that 28 U.S.C. § 1961(a) rate should be applied in context of ERISA claim for prejudgment interest). Courts commonly look to state statutory prejudgment interest provisions as guidelines for a reasonable rate. *See, e.g., Allison*, 289 F.3d at 1244 (holding that "district court did not abuse its discretion in awarding prejudgment interest at the Colorado statutory rate of 8 percent"); *cf. Cottrill v. Sparrow, Johnson & Ursillo, Inc.*, 100 F.3d 220, 224-25 (1st Cir.1996) (noting that because "ERISA is inscrutable on the subject" of the appropriate rate of prejudgment interest, "courts have discretion to select an appropriate rate, and they may look to outside sources, including state law, for guidance").

*Weber v. GE Group Life Assur. Co.*, 541 F.3d 1002, 1016 (10th Cir. 2008) (upholding award of prejudgment interest in ERISA case at 15% rate provided for under Oklahoma law. *See Biava v. Insurers Admin. Corp.*, 48 F.3d 1231 (Table), 1995 WL 94461, at *5-*6 (10th Cir. Mar.1, 1995) (unpublished) (upholding award of prejudgment interest in ERISA case at 15% rate provided for under New Mexico law).

In the exercise of its discretion and with an eye to consistency in such matters, *see Boggio v. Hartford Life and Acc. Ins. Co.,* 2009 WL 1505536, 8 (D.Kan. 2009), the court finds that an appropriate rate of prejudgment interest is the 10% rate set out in the Kansas prejudgment interest statute, K.S.A. § 16-201. The court thus awards prejudgment interest at the rate of 10% compounded annually on the employee withholding amounts ordered above.

Plaintiff additionally requests that the court permanently enjoin the defendants from violating the provisions of ERISA. Given the short period of time in which the

13

breaches occurred, the circumstances surrounding the breaches, the lack of any showing of egregious conduct on the part of the defendants, and the absence of a showing of a likelihood of repetition in the future, the court finds the requested injunction unnecessary.

IT IS THEREFORE ORDERED that the plaintiff's motion for summary judgment (Dk. 30) is granted in part and denied in part in accordance with the terms of this memorandum and order.

Dated this 24th day of November, 2009.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge